# EXHIBIT A



These Conditions of Contract are an integrated agreement between Purchaser and Vendor consisting of these Conditions of Contract, the terms contained in Purchaser's Partners Online system, including the Rules of Use therein (or any successor system to Partners Online) ("POL"), any agreement(s) entered into between Purchaser and Vendor (including any agreements entered into through Purchaser's online systems), any Purchase Order(s), and any attachments, instructions or requirements furnished to Vendor by Purchaser (all of the foregoing are part of this agreement and are referred to herein as the "Contract"). The Contract is binding with respect to all business conducted between Purchaser and Vendor and applies to and controls all agreements related to the purchase of Goods by Purchaser from Vendor (whether such purchase is made directly by Purchaser from Vendor or through a third party distributor or wholesaler), any Vendor Services (as such term is defined herein), and all agreements related to samples or free Goods provided by Vendor to Purchaser or its customers.

**Definitions**

As used herein, the following terms will have the following meanings:

"Contract" has the meaning set forth in the introductory paragraph above.

"Goods" means the items of merchandise that are the subject of the Contract (including components, packaging, labeling, instructions, printed matter, product descriptions, product designs, product images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"POL" has the meaning set forth in the introductory paragraph above.

"Purchase Order" means any order by Purchaser for the purchase of specified quantities of Goods at specified prices from Vendor whether issued through electronic data interchange (EDI) or otherwise.

"Purchaser" means, as applicable, Target Corporation, Target.com, a division of Target Corporation, Target Global Sourcing Limited, a subsidiary of Target Corporation, Target Sourcing Services Limited (TSS Ltd.), a subsidiary of Target Corporation, Target Sourcing Services LLC, a subsidiary of Target Corporation, Target Enterprise, Inc., a subsidiary of Target Corporation, Target Food, Inc., a subsidiary of Target Corporation, Target General Merchandise, Inc., a subsidiary of Target Corporation, or any other divisions or subsidiaries of Target Corporation (whether acting as purchasing agent for any Target Corporation division or subsidiary, or as a direct purchaser).

"Vendor" means the business partner that registered for access to POL or the recipient of the Contract, together with the parents, subsidiaries, and/or affiliates of such registering business partner or recipient.

1. **Purchase Order.** Purchaser's commitment to purchase Goods arises only upon Purchaser's issuance of a Purchase Order to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding upon Purchaser, and Purchaser shall not be liable for any amounts incurred by Vendor in reliance on such estimates.

2. **Acceptance, Validity, Terms.** Without limiting the manner or method of Vendor's acceptance of a Purchase Order, a Purchase Order is deemed accepted by Vendor if (i) Vendor's written rejection of such Purchase Order is not received by Purchaser within five days after Vendor's receipt of such Purchase Order, or (ii) prior to the expiration of such five day period, Vendor commences work on or ships any portion of Goods identified in the Purchase Order. Acceptance is limited to the terms of the Contract. Any proposal for additional or different terms, or any attempt by Vendor to vary any of the terms of the Contract in Vendor's acceptance, invoice, or other document or activity, is hereby objected to and rejected. If Purchaser's issuance of a Purchase Order is for any reason deemed an acceptance of a prior offer by Vendor, such acceptance is limited to the terms of the Contract.

3. **Shipment of Goods, Adequate Assurances.** Time is of the essence with respect to Vendor's performance under any Purchase Order. Goods must be shipped within dates specified by Purchaser, not before or after. Vendor shall notify Purchaser in the event Goods cannot be shipped within the specified dates. If reasonable grounds for insecurity arise with respect to the performance of Vendor in connection with a Purchase Order, Purchaser may make a written demand to Vendor that Vendor provide Purchaser with adequate assurance of due performance. Until Purchaser receives such adequate assurance, Purchaser may suspend its performance under the relevant Purchase Order. After Vendor's receipt of such a demand, failure by Vendor to provide such adequate assurance of due performance within five days is a repudiation of the Purchase Order, and Purchaser, at its option, may resort to any and all remedies available to it for breach of the Contract.

4. **Inspection.** Goods are subject to Purchaser's inspection, but Purchaser is under no obligation to unpack or inspect Goods before resale thereof. Purchaser's inspection, testing, payment for or retention of Goods does not (i) constitute an acceptance of Goods not in compliance with the Contract, (ii) affect Purchaser's right to reject or return Goods, or (iii) constitute a waiver by Purchaser of any Vendor representations, warranties or guarantees, or any rights or remedies of Purchaser under the Contract.

5. **Breach.** Any of the following is a breach of the Contract by Vendor:
   a. Vendor's failure to ship Goods within the dates specified by Purchaser;
   b. Goods are defective in whole or in part, are not of merchantable quality or are otherwise not fit for the purposes sold;
   c. any breach of Vendor's representations, warranties or guarantees;
   d. any delay in delivery or performance or departure from delivery, routing, hanging, ticketing, labeling or packaging instructions;
   e. any deviation from or variation in quantities, assortments, prices, or other terms or conditions specified in the Contract;
   f. a claim is made (whether founded or unfounded) or Purchaser has reason to believe that (a) the Goods contain defects or hazards that would create a substantial risk of injury to any person or property, or (b) the Goods or the purchase, display, design, manufacturing, delivery, labeling, packaging, placement, advertising, promotion, transportation, marketing, distribution, offer for sale or sale of Goods, or use or distribution of the Vendor Content (hereinafter defined) violates or will violate any Laws (including without limitation those related to safety, manufacturing, sale, labeling or transportation), or infringes any alleged patent, design, trade name, trademark, service mark, copyright, trade dress, right to privacy, right of publicity, or other similar proprietary or property right (each a "Proprietary Right");
   g. insolvency, reorganization, arrangement, receivership or liquidation of Vendor, Vendor makes a general assignment for the benefit of its creditors, Vendor ceases to actively conduct its business, Vendor files a voluntary petition for bankruptcy or Vendor has filed against it an involuntary petition for bankruptcy;
   h. Vendor's failure to timely pay all amounts owed by Vendor to its suppliers;
   i. Vendor's shipment of Goods for which there is not an outstanding Purchase Order;
   j. Purchaser has reason to believe Goods are marked in violation of applicable customs laws;
   k. any other failure by Vendor to timely and fully comply with any of the terms of the Contract; or
   l. Goods fail any test pursuant to any legal, Purchaser or other protocol or standard.

   Vendor hereby waives any right to cure a breach that might otherwise be available under law.

6. **Cancellation, Remedies, Recalls.**
   a. Cancellation Without Cause. Purchaser may cancel any Purchase Order, in whole or in part, for its convenience, at any time prior to shipment of Goods. In the event of such cancellation, (i) Vendor shall immediately stop all work under the relevant Purchase Order and shall immediately cause any and all of its suppliers or subcontractors to

cease such work, and (ii) Purchaser's liability to Vendor shall be limited to the unit price of Goods completed prior to such cancellation, plus the actual amount of Vendor's costs reasonably incurred in contemplation of performance of the canceled portion, less any amount saved by Vendor as a result of such cancellation and any amounts which could have reasonably been mitigated by Vendor, including, without limitation, work done after the receipt of the notice of cancellation, costs incurred by Vendor's suppliers or subcontractors that Vendor could reasonably have avoided, and amounts realized by Vendor from sale of Goods to third parties in accordance with the Contract.

b. Purchaser Remedies for Breach. In the event of any breach of the Contract by Vendor and subject to the other terms of the Contract, Purchaser may at any time, as to any or all Goods, without authorization from Vendor and in addition to any other remedies Purchaser may have:
   i. accept Goods;
   ii. cancel any Purchase Order;
   iii. reject and return Goods to Vendor at Vendor's expense;
   iv. refuse to receive Goods;
   v. revoke a prior acceptance of Goods and return Goods to Vendor at Vendor's expense; and/or
   vi. in the event the breach is an early shipment of Goods, reject and return the Goods to Vendor at Vendor's expense to be held by Vendor for Purchaser until the original date specified.

   In the event of any of the foregoing, Purchaser shall not be liable to Vendor for any amount except to pay for any Goods accepted by Purchaser (based on the unit price of Goods ordered), subject to Purchaser's right to deduct amounts owed to Purchaser by Vendor pursuant to the Contract. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Purchaser with respect to any Goods shall not serve as a cancellation or rejection of any future shipments of Goods, unless Purchaser exercises its right to cancel future Purchase Orders. Acceptance of any Goods is not a waiver of any of Purchaser's rights or remedies under the Contract.

   In the event of any breach of the Contract by Vendor, Vendor will be liable to Purchaser for (i) any direct and indirect damages, costs and expenses incurred or sustained by Purchaser in connection with the breach, including lost profits, attorneys' fees and costs incurred by Purchaser in obtaining substitute Goods elsewhere, (ii) any penalties, non-compliance fees, handling charges and other amounts as set forth in the Contract, (iii) if previously paid by Purchaser, the full unit price of any Goods that Purchaser has rejected (or revoked its acceptance of), and (iv) the amount of any penalties or fines assessed against or incurred by Purchaser in connection with the breach, including attorneys' fees incurred by Purchaser in defending against or responding to such penalties or fines.

c. Purchaser Remedies Cumulative. Each of Purchaser's rights and remedies under the Contract is cumulative and in addition to any other remedies provided in law or equity, including the Uniform Commercial Code.

d. Limitation of Vendor Remedies. In no instance will Purchaser be liable to Vendor in excess of the actual Purchase Order cost, less applicable discounts and other deductions. Furthermore, Purchaser will not be liable to Vendor for any punitive, special, incidental or consequential damage of any kind. Vendor may not bring a claim, dispute, lawsuit, demand or other cause of action based upon the transactions under the Contract (including debit memorandums, chargebacks or any other financial penalties assessed by Purchaser) more than one year after the cause of action has accrued, unless a different time period is set forth in the Contract.

e. Force Majeure. Purchaser may delay delivery or acceptance of any or all Goods, or cancel any Purchase Order in the event that such delay or cancellation is due to causes beyond Purchaser's reasonable control. In such event, Purchaser will not be liable to Vendor for any amount except to pay for the unit cost of Goods accepted by Purchaser.

f. Product Safety/Recalls/Market Withdrawals. Vendor shall comply with the Product Investigations and Recall and Food Recalls and Withdrawals sections of POL (or any successor sections thereto). In the event (i) a claim is made (whether founded or unfounded) or Purchaser has reason to believe that (a) the Goods contain defects or hazards that would create a substantial risk of injury to any person or property, (b) the Goods or the purchase, display, design, manufacturing, delivery, labeling, packaging, placement, advertising, promotion, transportation, marketing, distribution, offer for sale or sale of Goods, or the use or distribution of the Vendor Content, violates or will violate any Laws (including without limitation those related to safety, manufacturing, sale, labeling, or transportation) or infringes any alleged Proprietary Right, or (c) Goods fail any test pursuant to any legal, Purchaser or other protocol or standard, or (ii) Vendor or a government entity initiates removal of Goods from the stream of commerce, without limiting any of Purchaser's other remedies in the Contract or elsewhere, Purchaser may remove Goods from sale or distribution, reject Goods or revoke any prior acceptance of Goods and destroy Goods or return Goods to Vendor, in Purchaser's sole discretion, and Vendor shall be responsible for all costs associated therewith including those costs set forth in the Product Investigations and Recall and Food Recalls and Withdrawals sections of POL (or any successor sections thereto).

7. **Disposition of Rejected Goods.** With respect to Goods that Purchaser has rejected (or revoked acceptance of), Purchaser will return Goods to Vendor, except Purchaser may elect not to return Goods in the event: (i) Vendor and Purchaser have agreed that Goods will not be returned to Vendor; (ii) Vendor fails to authorize the return of Goods within 20 days after Purchaser's notice of rejection or revocation, (iii) the return of Goods is precluded by act of any government agency, regulatory authority or third party, (iv) a claim is made (whether founded or unfounded) or Purchaser has reason to believe that (a) the Goods contain defects or hazards that could create a substantial risk of injury to any person or property or (b) the Goods or the purchase, display, design, manufacturing, delivery, labeling, packaging, placement, advertising, promotion, transportation, marketing, distribution, offer for sale or sale of Goods, or the use or distribution of the Vendor Content, violates or will violate any Laws (including, without limitation, those related to safety, manufacturing, sale, labeling or transportation) or infringes any alleged Proprietary Right; (v) Goods fail any test pursuant to any legal, Purchaser or other protocol or standard; (vi) Purchaser is the importer of record of Goods or (vii) Purchaser has reasonable cause to believe that Vendor intends to dispose of Goods in contravention of the Intellectual Property and Brand Protection section of POL (or any successor section thereto). Goods not returned by Purchaser may be disposed of by Purchaser in its sole discretion. With respect to any Goods disposed of or returned by Purchaser, Vendor will be liable for all costs and expenses related to the disposition or return, including any standard processing fees charged by Purchaser, any freight, storage, and disposal or destruction costs.

8. **Disposal of Goods by Vendor.** Vendor will only dispose of Goods in accordance with the Contract including the Intellectual Property and Brand Protection section of POL (or any successor section thereto). Further, Vendor shall ensure that its suppliers and distributors will only dispose of Goods in accordance with the Contract including the Intellectual Property and Brand Protection section of POL (or any successor section thereto).

9. **Payment.**

a. Payment. Purchaser pays from invoice only and as set forth in the Contract, including the sections of POL regarding payment. Purchaser will only accept invoices from Vendor. Prices set forth in a Purchase Order are complete and include, unless otherwise specifically provided in the Contract, shipping, packaging, labeling, custom duties, taxes, storage, insurance, boxing and crating. No additional charges of any type may be added without Purchaser's express written consent. No interest or other charges shall be owed by Purchaser with respect to any Purchase Order or invoice, whether claimed by reason of late payment or otherwise. Payment of any invoice by Purchaser does not affect Purchaser's right to exercise any remedy for breach of the Contract.

b. Deductions. Purchaser may deduct from any payments to Vendor any amounts owed by Vendor to Purchaser under the Contract including, without limitation, any damages for breach to which Purchaser is entitled, any charges or penalties for non-compliance with Purchaser's requirements, and any amounts otherwise owed to Purchaser under the Contract.

c. Holds. Purchaser may withhold payments to Vendor (a "Hold") to satisfy Vendor's actual or anticipated obligations to Purchaser.

d. Balances Owed by Vendor. In the event that Vendor owes Purchaser any amounts, Vendor agrees to pay immediately such amounts to Purchaser in immediately available funds

10. **Representations, Warranties and Guarantees.**

a. Compliance. Vendor represents, warrants and guarantees that Goods, and the design, manufacturing, delivery, labeling, packaging (including all warranties and disclaimers), placement, advertising, promotion, sale and offer for sale, safety, purchase, display and transportation of Goods, and use of Vendor Content, and all representations, warranties, guarantees and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable U.S. and foreign laws (including common laws and civil laws), bylaws, treaties, decrees, rules, regulations, standards, codes, orders, directives, guidelines, judicial and administrative decisions, agency and regulatory requirements, and ordinances, whether now in force or hereinafter enacted of the country of origin, the country(ies) of sale and delivery to the end consumer, the country(ies) of offer for sale to the end consumer, the country(ies) of purchase by and delivery to Purchaser, the country of transit, and any state, province or other subdivision of any of the foregoing, and any agency or entity of the foregoing ("Laws"), including, without limitation: the Tariff Act of 1930; the Fair Packaging and Labeling Act; the Lanham Act; the Federal Food, Drug, and Cosmetic Act; the Federal Trade Commission Act; the Magnuson-Moss Warranty Act – Federal Trade Commission Improvement Act; the Radiation Control for Health and Safety Act of 1968; the Federal Environmental Pesticide Control Act of 1972; the Refrigerator Safety Act; the Children's Gasoline Burn Prevention Act; the Virginia Graeme Baker Pool

and Spa Safety Act; the Consumer Product Safety Act; the Consumer Product Safety Improvement Act of 2008; the Flammable Fabrics Act; the Federal Hazardous Substances Act; the Hazardous Materials Transportation Act of 1975; the Fair Labor Standards Act of 1938; the Wool Products Labeling Act of 1939; the Agricultural Marketing Act of 1946; the Indian Arts and Crafts Act of 1990; the Indian Enforcement Act of 2000; the Federal Insecticide, Fungicide, and Rodenticide Act; the Textile Fiber Products Identification Act, the Fur Products Labeling Act; the Poison Prevention Packaging Act of 1970; the Child Protection & Toy Safety Act of 1969; the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65); the Toxic Substances Control Act; the Endangered Species Act of 1973; the United States Leachable Lead and Cadmium Standards; all applicable United States Food and Drug Administration Standards; the Federal Alcohol Administration Act; the Internal Revenue Code; and such Laws relating to environmental and transportation matters or those requiring any form of notice or warning in connection with the sale, shipment, storage or marketing of Goods. Vendor further represents, warrants and guarantees that all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and shipping Goods comply with all Laws. Vendor acknowledges and agrees that it shall be a breach of its representation, warranty and guarantee if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Purchaser. In the event Goods fail to comply with any representation, warranty or guarantee set forth in this subsection 10(a) at any time, Vendor agrees that it will immediately notify Purchaser and take all measures to identify the Goods that are or may be affected. Vendor acknowledges that its obligations under this paragraph are an appropriate allocation of risk between Vendor and Purchaser

b. **Continuing Food and Drug Guarantee.** Vendor represents, warrants and guarantees that any food, drug or cosmetic product delivered hereunder, and all components thereof, including packaging, (i) are not adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act ("FDCA") and all acts amending or supplementing the FDCA and similar state or local laws or ordinances, (ii) are not Goods that may not, under any of the provisions of the foregoing, be introduced into interstate commerce under sections 404 or 405 of the FDCA, and (iii) are not and do not contain a banned or misbranded hazardous substance.

c. **Guaranties.** Vendor represents, warrants and guarantees that, for so long as Purchaser may sell Goods purchased from Vendor, Vendor will maintain a continuing guaranty with the Federal Trade Commission or the Consumer Products Safety Commission, as applicable, in such form as may be required from time to time by applicable rules and regulations, pursuant to and with respect to the Flammable Fabrics Act, the Wool Products Labeling Act of 1939, the Textile Fiber Products Identification Act, and the Fur Products Labeling Act, as applicable. In the event any such guarantee is not on file, Vendor represents, warrants and guarantees that each invoice or other paper, as defined in the applicable rules and regulations, regarding Goods shall set forth a separate guaranty stating that (i) any Goods with fabric or related material subject to the Flammable Fabrics Act have been tested with reasonable and representative tests made in accordance with standards issued or amended under the provisions of section 4 of the Flammable Fabrics Act ("Section 4") and conform with applicable flammability standards issued or amended under the provisions of Section 4, and that further processing has not affected the flammability of such fabric or related material, (ii) any Goods subject to the Wool Products Labeling Act of 1939 are not misbranded under the provisions thereof and rules and regulations thereunder, (iii) any Goods subject to the Textile Fiber Products Identification Act are not misbranded or falsely or deceptively advertised or invoiced under the provisions thereof and rules and regulations thereunder, and (iv) any Goods subject to the Fur Products Labeling Act are not misbranded or falsely or deceptively advertised or invoiced under the provisions thereof and rules and regulations thereof. Vendor represents, warrants and guarantees that each Invoice regarding Goods delivered hereunder sets forth a separate guarantee and certification that Goods were produced in compliance with all applicable requirements of sections 6, 7, and 12 of the Fair Labor Standards Act of 1938, as amended and of regulations or orders of the U.S. Department of Labor issued under section 14 thereof.

d. **Merchantability, Fitness, Conformance, Non-Infringement.** Vendor represents, warrants and guarantees that Goods (i) are merchantable, (ii) are of good quality and workmanship, (iii) are free from defects, latent or patent, in material, design and workmanship, (iv) are fit, sufficient and safe for their intended purpose and for the particular purpose for which purchased, if Vendor knows or reasonably should know of such purpose, (v) are in conformity in all respects with all specifications, performance standards, drawings, samples or descriptions, furnished, specified or adopted by Purchaser, (vi) pass all applicable tests pursuant to any legal, Purchaser or other protocol or standard, (vii) are free of any claim of any third party, (viii) do not infringe upon or violate any Proprietary Right of any third party, and (ix) are genuine and in their original manufactured condition containing all original manuals and information.

e. **No Violation or Breach.** Vendor represents, warrants and guarantees that in obtaining, manufacturing, selling and delivering Goods neither Vendor nor anyone affiliated with or representing Vendor has or will breach any agreement with or commitment or representation to any third party and that there is no impediment or restriction, legal or otherwise, that limits, prohibits or prevents Purchaser from reselling Goods to its customers.

f. **Patent Marking.** Vendor represents, warrants and guarantees that the use of any patent numbers, "patent pending," "patent applied for," or any other form of patent marking on any product or packaging of a product supplied to Purchaser is valid and appropriate for the product so marked and that such marking will continue to be valid and appropriate for the duration of time the product is provided to Purchaser and likely to be stocked and sold by Purchaser.

g. **Benefits and Allowances.** Vendor represents, warrants and guarantees that prices, benefits or allowances for Goods are not less favorable than those prices, benefits or allowances currently extended to any other customers for the same or similar goods in similar quantities. In addition, in the event Vendor reduces its prices for Goods or similar goods during the term of the Contract, Vendor agrees to reduce the prices of Goods on order, in transit or on hand correspondingly, and such price reduction(s) may, in Purchaser's sole and absolute discretion, be deducted from outstanding Vendor invoices or offset against Vendor's account. Purchaser shall not be obligated to take a credit against future purchases at the time of the reduction.

h. **Country of Origin.** Vendor represents, warrants and guarantees that Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.

i. **Free Trade / Preferential Duty Treatment.** To the extent the Goods are being sold to Purchaser with assurances that they meet the requirements of, and qualify for, benefits under any free trade agreement (such as NAFTA) or any other program or programs affording the Goods preferential duty treatment, Vendor represents, warrants and guarantees that it will cooperate fully with the applicable customs agency(ies) to substantiate that the Goods actually meet the requirements of and qualify for such benefits, which cooperation may entail, but shall not be limited to, allowing the requesting agency or agencies access to Vendor's manufacturing facilities or administrative offices and providing whatever documentation, information, records, assurances, or certifications that are necessary to substantiate the Goods are qualifying. By way of example, if so requested, Vendor must provide whatever evidence is necessary to support the assertions made within any NAFTA Certificate of Origin in connection with any Goods claiming NAFTA benefits. Furthermore, Vendor represents, warrants and guarantees that it will indemnify and defend the Purchaser Parties (as hereinafter defined) against any Claims (also as hereinafter defined) arising by reason of (i) Vendor's failure to cooperate with the applicable customs agency(ies) as required pursuant to the foregoing, and/or (ii) Vendor's failure to substantiate that the Goods meet the requirements of, and qualify for, the applicable free trade agreement or other program or programs affording preferential duty treatment.

j. **Conflict Minerals.** As used in this Agreement, the following terms have the following meanings: (i) "Conflict Minerals" means tin, tungsten or gold, irrespective of the source; (ii) "Covered Country" means the Democratic Republic of the Congo or an adjoining country (Angola, Burundi, Central African Republic, the Republic of the Congo, Rwanda, South Sudan, Tanzania, Uganda and Zambia); (iii) "Conformant Smelter" means a smelter or refiner determined to be conformant by the Responsible Minerals Initiative's Responsible Minerals Assurance Process or another internationally-recognized certification program; and (iv) "Conflict Minerals Compliance Program" means a Conflict Minerals compliance program that is consistent with OECD Due Diligence Guidance for Responsible Supply Chains of Minerals from Conflict-Affected and High-Risk Areas and that includes, without limitation, adopting a Conflict Minerals sourcing policy, putting in place other applicable management systems, conducting supplier outreach and due diligence, and engaging in risk mitigation. Vendor represents, warrants and guarantees that the Goods shall not contain any Conflict Minerals from a Covered Country unless the Conflict Minerals are sourced from a Conformant Smelter. In addition, Vendor shall implement a Conflict Minerals Compliance Program. Vendor shall timely respond to any inquiries from Purchaser regarding Conflict Minerals, maintain records of its Conflict Minerals-related supplier inquiries, due diligence, and resulting decisions for a period of a least five years, and furnish those and other relevant records to Purchaser upon request

k. The representations, warranties and guarantees of Vendor hereunder are in addition to all other express and implied warranties and shall run to the benefit of and shall create direct rights of enforcement and remedy in Purchaser. The representations, warranties and guarantees of Vendor hereunder are continuing in nature and shall not be affected or limited in any way by Purchaser's extension of express or implied warranties to its customers except to the extent that any such warranties expressly extend beyond the scope of the Vendor's representations, warranties or guarantees, express or implied, to Purchaser. Vendor's representations, warranties and guarantees remain in full force and effect notwithstanding any design or manufacturing or other similar guidance provided by Purchaser at any time. None of the remedies available to Purchaser for the breach of any of the foregoing representations, warranties or guarantees may be limited except to the extent and in the manner agreed upon by Purchaser in a separate agreement specifically designating such limitation and signed by an authorized representative of Purchaser. Vendor is not relieved from any obligations or liability (including without limitation to any customer of Purchaser) for any reason or because of any action by Purchaser or any third party including, but not limited to, any of the following: (i) Vendor has received a satisfactory lab test result, (ii) Purchaser has conducted testing, (iii) Purchaser has accepted or approved Goods, Vendor Content, designs, claims, materials or packaging, (iv) Purchaser has furnished, specified or adopted product specifications, performance standards, drawings,

product claims, instructions, descriptions, design or manufacturing guidance and/or other information related to the Goods or Vendor Content, and/or (v) Purchaser has authorized an override of testing protocol or testing results.

11. **Other Agreements**.

a. Resale Goods With respect to any Goods of which Vendor is not the original manufacturer (hereinafter referred to as "Resale Goods") Vendor represents, warrants and guarantees that: (i) if Resale Goods are of a type that would normally be accompanied by an express written manufacturer's warranty valid in the place of sale to the consumer or United States when distributed through the manufacturer's regular channels, the Resale Goods sold to Purchaser hereunder will contain such express written manufacturer's warranty applicable when the Resale Goods are sold by Purchaser; and (ii) Vendor will retain and, upon Purchaser's request, provide to Purchaser original, complete, unaltered and unredacted invoices from the manufacturer or entity authorized to possess the Resale Goods demonstrating Vendor's lawful possession of the Resale Goods.

b. Third Party Representatives. Vendor may engage a third party as a manufacturer's representative to interact with Purchaser on Vendor's behalf (a "**Third Party Representative**") Vendor agrees that any Third Party Representative engaged by it is acting on Vendor's behalf and Purchaser may rely upon any statements or representations made by the Third Party Representative. Vendor further agrees that it is solely responsible for all matters relating to the Third Party Representative's duties and compensation.

c. Anti-Bribery.

i. Anti-Bribery. Vendor's performance of a Purchase Order is subject to the United States Foreign Corrupt Practices Act ("FCPA") as well as other applicable anti-bribery laws. Neither Vendor nor any acting on its behalf will violate the FCPA or any other anti-bribery law for the benefit of or on behalf of Purchaser or Vendor. Vendor will not, directly or indirectly, pay, offer to pay, or authorize the payment of any money or transfer of anything else of value to:

i. An officer, employee, agent or representative of any government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity or any person acting in an official capacity on behalf thereof, or any political party, any official of a political party or public international organization, or any candidate for political office (each, a "Government or Political Official or Entity"); or

ii. Any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official or Entity, for the purpose of improperly influencing any act or decision of such Government or Political Official or Entity in his, her or its official capacity. Relevant acts or decisions include a decision to do or not do any act in violation of the lawful duty of such person or entity, or inducing such person or entity to use his, her or its influence with the government or instrumentality thereof to affect or influence any act or decision, in order to obtain, retain or direct any business or to secure any other improper business advantage. Additionally, Vendor will not directly or indirectly make, provide, offer or authorize any payment or anything else of value to any Government or Political Official or Entity for the purpose of expediting or securing the performance of a routine governmental action by such Government or Political Official or Entity. Vendor must immediately notify Purchaser of any actual or suspected breach of this Section.

ii. Questionnaire. If Vendor completes an FCPA third party due diligence questionnaire, then Vendor's responses to any such FCPA third party due diligence questionnaire are incorporated by reference to the Contract and constitute Vendor representations, warranties and guarantees under the Contract.

iii. Certifications. Vendor shall provide to Purchaser such information and further written certifications as Purchaser may request from time to time to assist Purchaser's efforts to assure compliance with the FCPA and other applicable anti-bribery laws.

iv. Training. Upon request by Purchaser, Vendor shall institute a FCPA compliance training and reporting program that meets Purchaser's prescribed requirements. Additionally, Purchaser may designate Vendor personnel who and positions that must receive such training.

d. Financial Information. From time to time upon Purchaser's request, Vendor will provide Purchaser with reasonable information regarding Vendor's financial status including, without limitation, financial statements, credit reports and Dun & Bradstreet reports.

12. **Records and Audits**. For two years following the issuance of a Purchase Order, Vendor shall keep full and accurate books of account and all documents and other materials relating to the subject matter of that Purchase Order and Vendor's fulfillment of that Purchase Order. During that same period Purchaser, or its duly authorized agent or representative, shall have the right, upon reasonable notice, to audit and inspect such books, documents, and other material during Vendor's normal business hours, and may make copies of such books, documents and other materials in order to verify whether Vendor has complied with its obligations under the Contract. Vendor will promptly pay Purchaser for any overcharges made by Vendor that are disclosed by such audit. In addition, if any audit of Vendor's books and records reveals that Vendor has erroneously charged Purchaser $1,000.00 or more, then Vendor shall reimburse Purchaser for Purchaser's direct out-of-pocket expenses incurred in conducting the audit.

13. **No Variances**. Regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed.

14. **Indemnification; Information Request**.

a. Indemnification. Vendor shall defend, indemnify and hold harmless Purchaser, Purchaser's affiliates, Purchaser's subsidiaries, and each of their respective directors, officers, shareholders, employees, contractors and agents (collectively, the "Purchaser Parties") from and against any liabilities, losses, investigations or inquiries, claims, demands, actions, proceedings, suits, damages, penalties, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) (each a "Claim"), now existing or hereafter commenced, which any buyer or user of Goods, or any other entity or person (including employees, agents or Third Party Representatives of Vendor), whether in privity with Purchaser or not (any of the foregoing, a "Claimant"), may make against any of the Purchaser Parties, based upon, arising out of or otherwise relating to the subject matter of the Contract (including without limitation the purchase, display, design, manufacture, delivery, ticketing, labeling, packaging, placement, advertising, marketing, promotion, sale or offer for sale, distribution, safety, marketing, transportation or use of Goods or Vendor Content), Vendor's performance or failure to perform as required by the Contract, Vendor's acts or omissions, any of Vendor's representations, warranties or guarantees contained in the Contract, or any patent, design, trade name, trademark, service mark, copyright, trade dress, right of privacy, right of publicity or other similar proprietary or property right with respect to any or all Goods or Vendor Content. Vendor shall also defend, indemnify and hold harmless the Purchaser Parties, from and against any Claim, now existing or hereafter commenced, which any Claimant may make against any of the Purchaser Parties based upon, arising out of or otherwise relating to Vendor's actual or alleged failure to offer "compliant coverage" (coverage under an "eligible employer-sponsored plan" under Internal Revenue Code Section 5000A(f)(2)) to Vendor's employees or Vendor's contingent workers providing services to Purchaser, (iii) a violation of any transshipment regulation, or (iv) the Vendor Equipment or Vendor Services (including without limitation any Claim that the persons performing the Vendor Services (the "Vendor Personnel") are employees or joint employees of Purchaser or any Claim for injuries suffered by Vendor Personnel). Any attorney selected by Vendor to defend Purchaser Parties must be reasonably satisfactory to Purchaser. Until a court of competent jurisdiction finds the Purchaser Parties negligent, a claim of negligence against any of the Purchaser Parties will not limit Vendor's duties under this section, and Vendor must defend, indemnify, and hold harmless the Purchaser Parties against claims of negligence against the Purchaser Parties. Upon such a finding, Purchaser will reimburse Vendor, in proportion to the Purchaser Parties' fault, for reasonable costs incurred by Vendor in defending such claim of negligence against the Purchaser Parties.

b. Information Request. Vendor shall also be liable to the Purchaser Parties for any and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) arising out of or related to any Purchaser Party's response to any subpoena, discovery request or other request for information submitted to or served upon a Purchaser Party in connection with any lawsuit, claim or other proceeding to which Vendor is a party or any governmental investigation being conducted with respect to Vendor or the Goods.

It is the intent of the parties hereto that all Vendor indemnity obligations and responsibility for other costs and expenses be without limit and without regard as to whether or not Purchaser furnishes specifications, inspects or approves Goods. The purchase of insurance and furnishing of any certificates shall not in any way modify Vendor's agreement to indemnify Purchaser Parties or be liable to Purchaser Parties for other costs and expenses.

15. **Insurance**. Vendor shall maintain in full force and effect minimum insurance of the following kinds and amounts and meeting such other requirements as set forth below.

a. Workers' Compensation and Employer's Liability Insurance. Workers' compensation insurance, affording statutory coverage and containing statutory limits for the state(s) in which Vendor is conducting business related to the Contract, and employer's liability insurance in the amount of $1,000,000 each accident for bodily injury, $1,000,000 each employee for bodily injury by disease, and $1,000,000 policy limit for bodily injury by disease.

b. Commercial General Liability Insurance. Commercial general liability ("CGL") insurance, including product liability coverage, with minimum limits of coverage of not less than $5,000,000 per occurrence for bodily injury and property damage, which shall include the following additional coverages: products and completed operations, contractual liability for liabilities assumed by Vendor under the Contract, and personal and advertising injury liability. Vendor's CGL insurance shall: (i) designate "Target Corporation and its subsidiaries" as additional insureds, including with respect to third party claims or actions brought directly against Purchaser or against Purchaser and

Vendor as co-defendants and arising out of the Contract, (ii) provide for a severability of interests, and (iii) have an additional insured endorsement of CG2015, CG2026, or equivalent. Coverage shall also include a waiver of subrogation.

    i. Vendor shall evidence to Purchaser the required insurance for a continuous period of not less than three years from the receipt of Goods.

    ii. Vendor must provide insurance for the life of Goods covering claims occurring or brought by third parties, including after Purchaser discontinues sale of Goods.

  c. Automobile Liability Insurance. Automobile Liability insurance including coverage for owned, hired and non-owned vehicles) with minimum limits of not less than $1,000,000 per occurrence combined single limit for personal injury, including bodily injury, death and property damage.

  d. Network Security. Vendor, as applicable, shall comply with the requirements for network security coverage set forth in the Insurance section of POL (or any successor section thereto).

  e. General Insurance Requirements.

    i. Insurer Stability and Size. All coverage required under this section shall be procured from a company or companies possessing an A.M. Best rating of A- VII or better.

    ii. Insurer Qualification. All coverage required under this section shall be obtained from a company or companies that are authorized to do business under the laws of the state(s) in which Vendor is conducting business related to the Contract.

    iii. Occurrence Basis. All coverage required under this section shall be written on an occurrence basis.

    iv. Vendor Insurance is Primary. Vendor's insurance shall be primary and non-contributory, and required to respond to and pay prior to any other available coverage of Purchaser.

    v. Certificate of Insurance. Vendor shall provide Purchaser with a certificate(s) of insurance evidencing the required coverage before shipping Goods and upon each renewal of such policies. The Certificates of Insurance shall include a clause that obligates the insurer(s) to give Purchaser at least 30 days prior written notice of any material change or cancellation of such policies.

    vi. Self-Insurance. Vendor shall not self-insure its coverage required under this section without the prior written consent of Purchaser.

    vii. Territory. All such policies shall include a worldwide coverage territory and cover claims brought worldwide.

    viii. Miscellaneous. Vendor shall obtain such insurance prior to shipping any Goods. The insurance obligations of Vendor herein shall survive the completion or termination of any Purchase Order under the Contract. The purchase of insurance and furnishing of any certificates shall not limit Vendor's obligations hereunder. Vendor further agrees to insure, at its sole cost and expense, for their full and true retail value, any Goods which by the terms of the Contract, or any other agreement between Purchaser and Vendor, are to be stored at other than Purchaser's facilities.

  f. Vendor Services, Vendor Equipment and Vendor Personnel. The insurance required to be obtained and maintained by Vendor pursuant to the Contract shall provide coverage with respect to Vendor Services and Vendor Equipment, and coverage for claims alleging that the Vendor Personnel are employees or joint employees of Purchaser and claims for injuries suffered by Vendor Personnel.

16. **Vendor Equipment, Vendor Services.** In the event (a) Vendor performs services related to or in connection with Purchaser or Goods , whether performed on Purchaser's premises or elsewhere, including, but not limited to delivery, stocking, removal, installation, maintenance, promotion, consulting, category management or other services (collectively, "Vendor Services") or (b) Vendor provides any equipment, fixtures or other tangible property in connection with the Vendor Services or the Goods ("Vendor Equipment"), the following additional terms and provisions shall apply:

  a. Vendor agrees that all representations, warranties and guarantees set forth in the Contract shall apply to Vendor Services and Vendor Equipment;

  b. In addition to the representations, warranties and guarantees referenced in (a) above, Vendor represents, warrants and guarantees that Vendor Services shall be provided in a good and workmanlike manner;

  c. Vendor shall, at its expense, obtain all licenses and permits and shall pay all inspection fees necessary in connection with the performance of any Vendor Services;

  d. Purchaser has no obligation to maintain any Vendor Equipment or to provide notice to Vendor of any failure of or damage to any Vendor Equipment; and

  e. All Vendor Services performed shall be performed by Vendor as an independent contractor, and the Vendor Personnel shall not be considered employees or joint employees of Purchaser. Vendor is solely responsible for paying all wages, salaries, compensation, benefits and taxes payable with respect to the Vendor Personnel and for complying with all applicable laws relating to the Vendor Personnel. Vendor shall be solely responsible for hiring, training, disciplining, terminating, supervising, directing, scheduling and retaining the Vendor Personnel; provided, however, Purchaser may request that Vendor assign, transfer or cease to utilize any member of the Vendor Personnel who, in Purchaser's reasonable judgement, is objectionable. Vendor shall have in place a process for interviewing, screening, and performing background checks on prospective Vendor Personnel that is consistent with industry standards and compliant with applicable laws as well as any applicable Purchaser security procedures. Vendor shall follow such process for every member of the Vendor Personnel prior to performance of the Vendor Services. Vendor and its Vendor Personnel shall comply with Purchaser's policies and rules regarding safety and security, legal compliance and information security. In addition to Vendor's indemnification obligations to Purchaser in this Agreement, Vendor is liable to Purchaser for losses due to Vendor Personnel's actions, including without limitation Vendor Personnel-caused theft, damage or destruction.

17. **Confidentiality, Use of Names and Marks.**

  a. Confidentiality. Vendor is subject to and will comply with the confidentiality provisions set forth in the Rules of Use and Confidentiality Agreement section of POL (or any successor section thereto) Unless otherwise agreed in writing, no information disclosed or supplied by Vendor to Purchaser shall be deemed secret or confidential and Vendor shall have no rights against Purchaser with respect thereto.

  b. Use of Purchaser's Name. Vendor shall not use Purchaser's name, trademarks, service marks, logos, any description that would reveal Purchaser's identity, or other form of identification of Purchaser, whether registered or not (the "Purchaser Identification") in any way, including, but not limited to, any advertisements, press releases, announcements, customer lists (including customer lists on any website) or materials of a public or promotional nature or in soliciting other clients nor make any direct or indirect public reference to the Contract or any other agreement between Vendor and Purchaser without first obtaining Purchaser's written consent, which may be withheld in Purchaser's sole discretion. In addition, Vendor agrees that it shall not negatively reference or disparage Purchaser.

  c. Use of Purchaser's Marks. Vendor may only use trademarks, service marks, logos, marks, images, copyrights, trade names, trade dress, characters, designs, names, symbols or other materials owned, copyrighted or licensed by Purchaser or Purchaser's licensors in accordance with the Contract including the Intellectual Property and Brand Protection section of POL (or any successor section thereto).

  d. Use of Vendor Goods; Content and Marks. Vendor hereby grants to Purchaser the royalty-free, sublicensable, worldwide right to use the Goods (including, for clarity, all trademarks, service marks, trade names, trade dress, copyrights, logos and images) and Vendor Content (hereinafter defined) in or related to Purchaser's retail operations. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods, Vendor Services or Vendor Equipment. Vendor acknowledges and agrees that under no circumstances is Purchaser required to use the "®," "™," "©" or other symbols or otherwise identify Vendor as the owner of any trademark or other rights.

18. **Assignment and Subcontracting.**

  a. No Assignment. Vendor shall not assign the Contract, in whole or in part (by assigning any right or delegating any duty under the Contract), voluntarily or involuntarily, by operation of law, or in any other manner, without Purchaser's prior written consent, which may be withheld in Purchaser's sole discretion. Any purported assignment or delegation by Vendor without Purchaser's prior written consent is void. A transfer of 30% or more of the shares or other ownership interests of Vendor will be considered an attempted assignment of the Contract by Vendor.

  b. Assignment of Payments. Notwithstanding the foregoing, Purchaser will allow Vendor to assign to not more than one person or entity, the right to receive 100% of the payments owed to Vendor under the Contract. If any such assignment is to any person or entity other than Purchaser's paying bank, notice of any such assignment, must be provided to Purchaser in accordance with Purchaser's requirements. If any such assignment is to Purchaser's paying bank, Vendor should not provide notice to Purchaser of the assignment. Purchaser reserves the right to require reasonable proof that the assignment has been made. If such proof is not timely furnished or if Vendor otherwise fails to comply with this section, Purchaser may reject the assignment and continue to pay Vendor. Any such assignee shall take assignment of payment subject to any and all claims and rights of offset Purchaser has against Vendor. Any such assignment shall not (i) affect any payments made prior to the effective date of such assignment, (ii) affect any of Purchaser's rights under the Contract, including its right to take deductions from Vendor's account, or (iii) relieve Vendor of any of its obligations under the Contract. Any assignment in violation of this provision shall be void.

  c. Assignment by Purchaser. Purchaser may assign the Contract, in whole or in part (by assigning any right or delegating any duty under the Contract) to an affiliated entity or to any other party in Purchaser's sole discretion. In the event Purchaser assigns the entire Contract to another party, Purchaser shall have no further obligation to Vendor under the Contract and Vendor hereby consents that Purchaser's assignment shall constitute a novation.\

d. Subcontracting. Purchaser's payment to Vendor constitutes payment for any Goods, services, equipment or other deliverable provided by any subcontractor of Vendor or Vendor's agent(s) or representative(s). Vendor remains fully responsible and liable to Purchaser for the acts of its subcontractors and performance of all Vendor's duties and obligations under the Contract.

19. **Notice.** Except as otherwise provided in the Contract, each party giving any notice required under the Contract shall be in writing and shall use one of the following methods of delivery: (a) United States-recognized overnight courier, with such notice effective at the time delivery is shown in the courier's records; (b) postage prepaid by United States registered or certified mail, return receipt requested, with such notice effective upon receipt or upon the date that delivery is attempted and refused; or (c) delivered personally, with such notice effective upon delivery. Either party may designate another notice address in a notice given pursuant to this section. The proper notice address for Vendor is Vendor's address reflected in Purchaser's records. Notices sent to Purchaser shall be sent to the following addresses:

Target Corporation
1000 Nicollet Mall
Minneapolis, MN 55403
Attn: Vice President, Merchandising
Dept: [Enter Department number(s) for the area(s) to which the notice relates]

With a copy to:

Target Corporation
1000 Nicollet Mall
Minneapolis, MN 55403
Attn: Chief Legal Officer

20. **Entire Agreement, Changes to Contract.**

a. Entire Agreement. The Contract constitutes the entire expression of the parties' agreement with regard to the subject matter of the Contract. All prior and contemporaneous negotiations and agreements between the parties with regard to the subject matter of the Contract are expressly superseded by the Contract.

b. Modification of the Contract. The Contract may not be modified by course of dealing, course of performance, or any oral communication between Purchaser and Vendor. The Contract may only be modified by (i) a separate written agreement signed by Vendor and an authorized agent or officer of Purchaser, or (ii) Purchaser providing Vendor, with respect to future Purchase Orders, with advance written or electronic notice (including providing notice as set forth in the Rules of Use and Confidentiality Agreement section of POL (or any successor section thereto))

c. Modification of Purchase Orders. Purchaser reserves the right at any time to make changes to any Purchase Order, including, without limitation, changes to the method of shipment, packaging, hanging, ticketing, labeling or packing, the time, place and manner of delivery, the specifications, or the quantity of Goods. If any such change shall cause an increase or decrease in the cost or time required for performance of the Purchase Order, Vendor shall immediately advise Purchaser of any such increase or decrease, and an equitable adjustment shall be made to the Purchase Order, including without limitation an adjustment to the Purchase Order price and/or delivery schedule. Any claim by Vendor for such adjustment must be approved by Purchaser in writing prior to such adjustment being made.

21. **Invalidity, Non-Waiver, Course of Dealing.** If any provision of the Contract is held invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not be affected or impaired. No provision of the Contract shall be waived except pursuant to a writing executed by the party against whom the waiver is sought. No waiver will be applicable other than for the specific instance in which it is given. Purchaser's failure to fully or timely exercise any right or remedy or Purchaser's failure to require the satisfaction of any condition under the Contract shall not operate as a waiver or estoppel of any right, remedy or condition. Purchaser's right to require strict observance of the terms of the Contract shall not be waived by course of dealing.

22. **Governing Law, Venue.** The laws of the State of Minnesota, without regard to Minnesota's choice of law principles, govern all matters arising out of or related to the Contract. The parties agree that the exclusive forum and venue for any lawsuit arising out of or related to the Contract shall be the United States District Court for the District of Minnesota, and the parties submit to the personal jurisdiction of that court. If neither subject matter nor diversity jurisdiction exists in the United States District Court for the District of Minnesota, then the exclusive forum and venue for any such action shall be the courts of the State of Minnesota located in Hennepin County, and the parties submit to the personal jurisdiction of that court. Furthermore, the parties agree that the 1980 United Nations Convention on Contracts for the International Sale of Goods, and any subsequent revisions thereto, do not apply to the Contract.

23. **Arbitration.** Any controversies or disputes arising out of, or relating to the Contract or the interpretation or breach hereof, shall, in Purchaser's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Purchaser's choice, in accordance with the laws of the State of Minnesota governing voluntary arbitrations. The location of such arbitration shall be in Minneapolis, Minnesota. Discovery shall be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative or precursor to arbitration. If the Contract governs an international transaction, the applicable state law regarding the arbitration of international disputes shall apply. The arbitrator shall agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.

24. **No Third Party Beneficiaries.** Certain sections of this Contract are for the benefit of the Purchaser Parties. As a result, any of the Purchaser Parties may enforce this Agreement. Except for the Purchaser Parties, this Agreement does not create any enforceable rights by anyone other than Purchaser and Vendor.

*Modified: 6/5/2018*

# EXHIBIT B

| | |
|---|---|
| In the Matter of an Arbitration Between: | ) |
| | ) |
| International Seaway Trading Corporation, | ) |
| Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| Target Corporation, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Target Corporation; Target Global Sourcing | ) Minneapolis, Minnesota |
| Limited, and Target General Merchandise, | ) |
| Inc. | ) |
| | ) |
| | ) |
| Counterclaimants, | ) |
| | ) |
| v. | ) |
| | ) |
| International Seaway Trading Corporation, | ) |
| | ) |
| | ) |
| Counter-Respondent. | ) |
| | ) |

## ARBITRATION SUMMONS TO APPEAR FOR DEPOSITION AND BRING DOCUMENTARY EVIDENCE

To:   Larry Satz, 215 S Mason Rd., Saint Louis, MO 63141-8026

By the authority conferred on the undersigned Arbitrator by Section 7 of the Federal Arbitration Act (9 U.S.C. § 7), you are hereby SUMMONED to be to attend as a witness at a deposition to be held on October 27, 2020 at 10:30 CDT by virtual means (instructions will be provided by the court reporter), and to bring with you the documents identified in Schedule A

annexed to this SUMMONS. The deposition will continue from day to day until completed, or may be continued until completed at a future date.

If you shall refuse or neglect to obey this SUMMONS, the United States District Court for the District of Minnesota, upon petition, may compel your attendance, or punish you for contempt in the same manner provided by law in the courts of the United States.

You may address questions concerning this SUMMONS to the attorneys identified below who requested this SUMMONS. Any application by you to quash or modify this SUMMONS in whole or in part should be addressed to the Arbitral Tribunal in writing, with copies to counsel for the parties, except that a motion upon the ground that the SUMMONS is unenforceable under Section 7 of the U.S. Arbitration Act may also be addressed to the United States District Court for the District of Minnesota.

The attorneys who requested this subpoena are:

Kerry L. Bundy
*Kerry.Bundy@faegredrinker.com*
Lauren W. Linderman
*Lauren.Linderman@faegredrinker.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600

The following provisions of Fed. R. Civ. P. Rule 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rules 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Dated: October 15, 2020

s/James M. Rosenbaum
_____

Hon. James M. Rosenbaum (Ret.)
333 So. Seventh St., Suite 2550,
Minneapolis, MN 55402
612-332-8225
jrosenbaum@jamsadr.com

## SCHEDULE A

Pursuant to JAMS Rule 21, Section 7 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and Rule 45 of the Federal Rules of Civil Procedure, Respondent/Counterclaimant Target Corporation and Counterclaimants Target Global Sourcing Limited and Target General Merchandise, Inc. (collectively, "Target") hereby request and demand that Larry Satz bring the follow documents for inspection and copying to the deposition noticed above.

## DEFINITIONS

1.     "You" or "Your" shall mean Larry Satz, including agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with it, or any entities acting under his direction or control.

2.     "ISTC," or "Claimant," shall mean Claimant International Seaway Trading Corporation, including without limitation its predecessors in interest, agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with it, or any entities acting under its direction or control.

3.     "Target" or "Respondents" shall mean any of the following entities: Target Corporation; Target Global Sourcing Limited, or Target General Merchandise, Inc., including without limitation their predecessors in interest, agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with them, or any entities acting under their direction or control.

4.     "Hunter" shall mean Hunter Boots, Ltd. or Hunter Boots USA LLC, including without limitation their predecessors in interest, agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with them, or any entities acting under their direction or control.

5.     "Target OB Goods" shall mean the Target Owned Brand goods that ISTC contracted to supply to Target in 2017 and 2018.

6.     "Hunter Boots" shall mean the Target limited-time offering of, among other things, the iconic Hunter rainboots for which ISTC contracted to supply to Target.

7.     "Document" shall mean any medium upon which information is or can be recorded and shall include originals, reproductions, and drafts, and specifically includes, but is not limited to, materials in electronic format, memoranda, notes, inter-office and intra-office communications, telegrams, letters, e-mail, data, reports, accounts, records, calendars, diaries, minutes, contracts or other legal documents, insurance policies, telephonic or personal communications, tape recordings, microfilm, film, stenographic notes, bulletins, notices, and computer data. Without limiting the foregoing, the term "Document" or "Documents" shall indicate any copy which differs in any respect from the original or other versions of the Document, such as copies containing notations, insertions, corrections, marginal notes or any other variations.

8.     "Communication" shall mean any oral, written, or electronic transmittal of information or request for information made from one Person to another Person, whether made in person, electronically, by telephone, or by any other means and includes any document(s) made only for the purpose of recording a communication, a fact, an idea, a statement, an inquiry, an opinion, a belief, or otherwise.

9.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside of its scope.

10. The terms "Relate," "Relating," "Related," or "Relates" shall mean referring to, alluding to, responding to, concerning, connected with, commenting on, respect of, about, regarding, discussing, describing, memorializing, reflecting, evidencing, or pertaining to.

11. As used herein, the singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

## INSTRUCTIONS

1. If no time period is identified within the Request, the Request shall pertain to the time period of January 1, 2017, to the present.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:** All Communications with ISTC's agents (Faikylite, Infinity Blue (Cougar), Jisheng) and/or factories Relating to Target, Hunter Boots, and/or Target OB Goods.

**REQUEST NO. 2:** All Documents Relating to Your work with Target.

**REQUEST NO. 3:** All Documents Relating to ISTC's production of Hunter Boots and Target OB Goods.

**REQUEST NO. 4:** All Communications with ISTC after You were no longer employed by ISTC regarding Hunter Boots, Target OB Goods, any dispute with Target, and/or this Arbitration.

**REQUEST NO. 5:** All Communications with Hunter Relating to Hunter Boots.

# EXHIBIT  D

Dear Judge Rosenbaum:

Re: ISTC v Target JAMS Reference #1390000711

I am ISTC's client representative for purposes of winding up the affairs of the company and responding to your Scheduling Order No.3. Please be advised that ISTC has no funds or assets and does not intend to pursue its Arbitration claims or defend against Target's claims. I understand, from a letter of November 16, 2020 from Target's attorneys to you(attached) that Target is amenable provided that it is declared the prevailing party, a condition which is acceptable.

Respectfully, "

Jane Chou
Chief Executive Officer
International Seaway Trading Corporation
E mail: lijane1234@yahoo.com.tw

# EXHIBIT E



**Kerry L. Bundy**
Partner
kerry.bundy@faegredrinker.com
+1 612 766 8217 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

November 16, 2020

**VIA E-MAIL**

The Honorable James M. Rosenbaum (Ret.)
333 S. Seventh St., Suite 2550,
Minneapolis, MN 55402
jrosenbaum@jamsadr.com

Re: *International Seaway Trading Corporation v Target Corporation*, **JAMS
Reference #: 1390000711—Target's Response to ISTC's 11-15 Letter**

Dear Judge Rosenbaum:

We are writing in response to International Seaway Trading Corporation's
("ISTC") November 15, 2020 Letter. ISTC stated that its counsel has been terminated,
that ISTC is insolvent, and that ISTC is "unable to conduct any further business."

It appears that ISTC is abandoning its claims in this arbitration. If that is the case,
under JAMS Rule 13(b), "the opposing Parties may, within seven (7) calendar days of
service of such notice, request that the Arbitrator condition the withdrawal upon such
terms as he or she may direct." Given the extensive litigation and costs incurred for this
arbitration, Target requests that the Arbitrator allow the withdrawal of ISTC's claims only
on the condition that they are dismissed with prejudice, and that Target is declared the
prevailing party for purposes of those claims.

Additionally, as of this time, Target intends to continue pursuing its
counterclaims.

Respectfully,

s/ Kerry L. Bundy

Kerry L. Bundy

cc: Counsel of Record (by email)

# EXHIBIT F

| | |
|---|---|
| In the Matter of an Arbitration Between: | JAMS Reference #: 1390000711 |
| International Seaway Trading Corporation, | |
| Claimant, | |
| v. | |
| Target Corporation, | |
| Respondent. | |
| | |
| Target Corporation; Target Global Sourcing Limited, and Target General Merchandise, Inc. | Minneapolis, Minnesota |
| Counterclaimants, | |
| v. | |
| International Seaway Trading Corporation, | |
| Counter-Respondent. | |

## OBJECTION TO ISSUANCE OF ARBITRATION SUMMONS TO LARRY SATZ

Through his counsel, Larry Satz ("deponent"), objects to the proposed issuance of a second
Arbitration Summons commanding him to appear at a virtual deposition on December 17, 2020
and produce documents on the following grounds:

1. These arbitration proceedings are being conducted by an Arbitrator located in the State of Minnesota, pursuant to paragraph 23 of Target's POL Contract which requires that discovery is permitted as provided by applicable State(of Minnesota) law.

2. Deponent is a resident of the State of Missouri.

3. Minnesota State law (Minn. Stat. section 572B.17) limits the subpoena power of an arbitrator to witnesses located within that state.

4. To the extent applicable, section 7 of the Federal Arbitration A (9 U.S.C. section 7) does not authorize the issuance of subpoenas to third party witnesses for pre- hearing discovery, and Federal Rule of Civil Procedure 45 (b) and (c) limit a district court's subpoena enforcement to the state in which the hearing is being conducted.

5. Since ISTC, a party to the arbitration, has advised the Arbitrator and Target that it will not be pursuing its claim and will not be defending Target's counterclaim, (to which Target has agreed, provided that it is declared the prevailing party),there are no issues of liability or damages to which the ownership of ISTC in 2014 or now, could possibly be relevant, including but not limited to ISTC's previous defense (now withdrawn, with all other defenses) that Target's POL contract is in part unconscionable.

6. According to the Joint Stipulation to Amend Scheduling Order No.1 signed by the parties and the Arbitrator on October 22, 2020, non- expert discovery is to be completed on or before December 4, 2020 and therefore a proposed deposition to be taken on December 17, 2020 is untimely.

Dated: December 4, 2020

Respectfully submitted,

Hennefer Finley & Wood LLP

By_____ *SCF*_____

Steven C. Finley, Attorneys for Larry Satz

# EXHIBIT G

International Seaway Trading
Corporation,

        Claimant,

v.

Target Corporation,

        Respondent.        SCHEDULING ORDER NO. 4

---------------------------------------------------

Target Corporation; Target Global
Sourcing Limited, and Target General
Merchandise, Inc.

        Counterclaimants,

v.

International Seaway Trading
Corporation,

        Counter-Respondent.

---

    This matter comes before the Arbitrator on Target Corporation, Target Global Sourcing Limited, and Target General Merchandise, Inc.'s (collectively, "Target") December 4, 2020, request for the issuance of a subpoena to former International Seaway Trading Corporation ("ISTC") employee Larry Satz. Counsel for Mr. Satz submitted a written objection on December 4, 2020.

    The Arbitrator heard argument from counsel for Mr. Satz and Target at a telephonic hearing held on December 8, 2020. Based upon the files, records, proceedings, and arguments of counsel, the Arbitrator finds as follows:

    1. Mr. Satz, a resident of St. Louis, Missouri, was deposed on October 29, 2020, pursuant to a subpoena issued under JAMS Rules and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Mr. Satz was represented by Mr. Steven Finley, then counsel to ISTC.

2. This Arbitration was initiated by Mr. Steven Finley, then counsel to ISTC. The matter is lodged in Minneapolis, Minnesota. On November 15, 2020, ISTC declared itself to be impecunious and sent an email communication to the Arbitrator stating it has abandoned its claims in this matter and will allow Target to proceed with its own claims as Target wishes. Mr. Finley has not filed a subsequent appearance, but has received notice of later proceedings. Mr. Finely participated in this present discovery dispute.

3. During Mr. Satz's deposition, Target's counsel sought to inquire into ISTC's ownership. Mr. Finley objected to the inquiry, and without seeking an Order from the Arbitrator, instructed Mr. Satz to decline to answer the question, purportedly on relevancy grounds. During this present hearing, the Arbitrator informed Mr. Finley that questions of relevancy were issues for the Arbitrator, and not for counsel. While Mr. Finley could, of course, state an objection, he would be able to raise the question of admissibility of the evidence at the Arbitration hearing, or with the Arbitrator. Further, of course, this is an Arbitration, and not a state or federal court proceeding; under JAMS Rules, strict adherence to the rules of evidence is not required. At the present time, and for purposes of this Arbitration, the Arbitrator considers that ISTC ownership might well be relevant, and is a proper subject for inquiry

4. On November 11, 2020, the Arbitrator ordered that Target was permitted to inquire into ISTC's ownership. The identity of ISTC's owners may well be relevant to Target's claims in the arbitration, and at this time is a permitted inquiry, subject to possible later objection on a developed record.

5. ISTC has failed to comply with the Arbitrator's November 11, 2020 Order.

6. On December 4, 2020 Target requested the issuance of a subpoena for Mr. Satz to inquire into ISTC's ownership. Mr. Satz, through Mr. Finley as his counsel, submitted a written objection that same day.

7. JAMS Comprehensive Arbitration Rule 21 states as follows:

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena duces tecum shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

8. Mr. Satz's objections do not warrant denying the request for a subpoena. Under the FAA and Eighth Circuit precedent, an arbitrator has the power to subpoena a third-party witness during pre-hearing discovery. See, e.g., In re Sec. Life Ins. Co. of Am., 228 F.3d 865, 870-71 (8th Cir. 2000).

Therefore, based on applicable rules and governing law, it is within the Arbitrator's authority to issue a pre-hearing subpoena to Mr. Satz.

9. Mr. Satz argues that the subpoena exceeds the scope of discovery allowed under Target's agreement with ISTC. The parties have agreed since commencement of the arbitration that discovery, including third-party discovery, is appropriate. (See Scheduling Order No. 1.) Further, the Arbitrator previously has issued similar subpoenas under the FAA at the request of both parties.

10. The Arbitrator notes that Mr. Satz appeared for his deposition on October 29 pursuant to such a subpoena. Thus, based on the parties' agreement and conduct, the Arbitrator concludes that the FAA applies to the issuance of subpoenas in this matter.

11. Mr. Satz also argues that the Arbitrator should not issue the requested subpoena because the deposition will take place after the Arbitrator's previously established close of fact discovery. The objection is spurious, in that the only reason the now-requested subpoena is necessary is Mr. Finley's ill-considered instruction to Mr. Satz to decline to answer the question now under consideration. Further, of course, the Arbitrator is certainly entitled to adjust an arbitrarily-set discovery close, and now opts to do so.

12. Mr. Finley did not claim, nor does the Arbitrator perceive, any undue burden on Mr. Satz which might be imposed by a limited continuance of his uncompleted deposition.

Therefore, IT IS HEREBY ORDERED that Target's Request for a Subpoena to Larry Satz is GRANTED.

1. Fact discovery is extended for the limited purpose of allowing Target to inquire into ISTC's ownership.

2. Under JAMS Rule 21, Target is entitled to the issuance of a subpoena for Larry Satz. Target's need for the information outweighs any burden of production on Mr. Satz.

3. Target will submit, and the Arbitrator will issue, a subpoena that allows for 3 hours of deposition of Larry Satz, during which Target's examination is limited to questions concerning ISTC's ownership.

SO ORDERED on this 15th day of December, 2020.

_s/James M. Rosenbaum_____
Hon. James M. Rosenbaum (Ret.)
JAMS Arbitrator

# EXHIBIT H

|  |  |
|---|---|
| In the Matter of an Arbitration Between: | ) |
|  | ) |
| International Seaway Trading Corporation, | ) |
|  | ) |
| Claimant, | ) |
|  | ) |
| v. | ) |
|  | ) |
| Target Corporation, | ) |
|  | ) |
|  | ) |
| Respondent. | ) |
|  | ) |
|  | ) |
|  | ) |
| _____ | ) |
|  | ) |
| Target Corporation; Target Global Sourcing Limited, and Target General Merchandise, Inc. | ) Minneapolis, Minnesota |
|  | ) |
|  | ) |
| Counterclaimants, | ) |
|  | ) |
| v. | ) |
|  | ) |
| International Seaway Trading Corporation, | ) |
|  | ) |
|  | ) |
| Counter-Respondent. | ) |
|  | ) |

### ARBITRATION SUMMONS TO APPEAR FOR DEPOSITION AND BRING DOCUMENTARY EVIDENCE

To:     Larry Satz, 215 S Mason Rd., Saint Louis, MO 63141-8026

By the authority conferred on the undersigned Arbitrator by Section 7 of the Federal Arbitration Act (9 U.S.C. § 7), you are hereby SUMMONED to attend as a witness at a 3-hour follow-up deposition to be held on January 6, 2021 at 10:30 CST by virtual means (instructions will be provided by the court reporter), and to bring with you the documents identified in

Schedule A annexed to this SUMMONS. The deposition will continue from day to day until completed, or may be continued until completed at a future date.

If you shall refuse or neglect to obey this SUMMONS, the United States District Court for the District of Minnesota, upon petition, may compel your attendance, or punish you for contempt in the same manner provided by law in the courts of the United States.

You may address questions concerning this SUMMONS to the attorneys identified below who requested this SUMMONS. Any application by you to quash or modify this SUMMONS in whole or in part should be addressed to the Arbitral Tribunal in writing, with copies to counsel for the parties, except that a motion upon the ground that the SUMMONS is unenforceable under Section 7 of the U.S. Arbitration Act may also be addressed to the United States District Court for the District of Minnesota.

The attorneys who requested this subpoena are:

Kerry L. Bundy
*Kerry.Bundy@faegredrinker.com*
Lauren W. Linderman
*Lauren.Linderman@faegredrinker.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600

The following provisions of Fed. R. Civ. P. Rule 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rules 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Dated: December 15, 2020

s/James M. Rosenbaum
_____

Hon. James M. Rosenbaum (Ret.)
333 So. Seventh St., Suite 2550,
Minneapolis, MN 55402
612-332-8225
jrosenbaum@jamsadr.com

## SCHEDULE A

Pursuant to JAMS Rule 21, Section 7 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* and Rule 45 of the Federal Rules of Civil Procedure, Respondent/Counterclaimant Target Corporation and Counterclaimants Target Global Sourcing Limited and Target General Merchandise, Inc. (collectively, "Target") hereby request and demand that Larry Satz bring the follow documents for inspection and copying to the deposition noticed above.

## DEFINITIONS

1.      "ISTC," or "Claimant," shall mean Claimant International Seaway Trading Corporation, including without limitation its predecessors in interest, agents, representatives, employees, consultants, attorneys, or entities acting in conjunction, joint venture, or partnership with it, or any entities acting under its direction or control.

2.      "Document" shall mean any medium upon which information is or can be recorded and shall include originals, reproductions, and drafts, and specifically includes, but is not limited to, materials in electronic format, memoranda, notes, inter-office and intra-office communications, telegrams, letters, e-mail, data, reports, accounts, records, calendars, diaries, minutes, contracts or other legal documents, insurance policies, telephonic or personal communications, tape recordings, microfilm, film, stenographic notes, bulletins, notices, and computer data. Without limiting the foregoing, the term "Document" or "Documents" shall indicate any copy which differs in any respect from the original or other versions of the Document, such as copies containing notations, insertions, corrections, marginal notes or any other variations.

3.      As used herein, the singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the

use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb shall be considered to include within its meaning all other tenses of the verb so used.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:** Documents sufficient to show the ownership of ISTC from 2014 to present.

# Rule 45. Subpoena

(a) In General.

(1) *Form and Contents.*

(A) *Requirements—In General.* Every subpoena must:

(i) state the court from which it issued;

(ii) state the title of the action and its civil-action number;

(iii) command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises; and

(iv) set out the text of Rule 45(d) and (e).

(B) *Command to Attend a Deposition—Notice of the Recording Method.* A subpoena commanding attendance at a deposition must state the method for recording the testimony.

(C) *Combining or Separating a Command to Produce or to Permit Inspection; Specifying the Form for Electronically Stored Information.* A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena. A subpoena may specify the form or forms in which electronically stored information is to be produced.

(D) *Command to Produce; Included Obligations.* A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials.

(2) *Issuing Court.* A subpoena must issue from the court where the action is pending.

(3) *Issued by Whom.* The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court.

(4) *Notice to Other Parties Before Service.* If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

(b) Service.

(1) *By Whom and How; Tendering Fees.* Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

(2) *Service in the United States.* A subpoena may be served at any place within the United States.

(3) *Service in a Foreign Country.* 28 U.S.C. §1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

(4) *Proof of Service.* Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(f) TRANSFERRING A SUBPOENA-RELATED MOTION. When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. Then, if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court. To enforce its order, the issuing court may transfer the order to the court where the motion was made.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

### NOTES

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 16, 2013, eff. Dec. 1, 2013.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1937

This rule applies to subpoenas *ad testificandum* and *duces tecum* issued by the district courts for attendance at a hearing or a trial, or to take depositions. It does not apply to the enforcement of subpoenas issued by administrative officers and commissions pursuant to statutory authority. The enforcement of such subpoenas by the district courts is regulated by appropriate statutes. Many of these statutes do not place any territorial limits on the validity of subpoenas so issued, but provide that they may be served anywhere within the United States. Among such statutes are the following:

U.S.C., Title 7, §§222 and 511n (Secretary of Agriculture)

U.S.C., Title 15, §49 (Federal Trade Commission)

U.S.C., Title 15, §§77v(b), 78u(c), 79r(d) (Securities and Exchange Commission)

U.S.C., Title 16, §§797(g) and 825f (Federal Power Commission)

U.S.C., Title 19, §1333(b) (Tariff Commission)

U.S.C., Title 22, §§268, 270d and 270e (International Commissions, etc.)

U.S.C., Title 26, §§614, 619(b) [see 7456] (Board of Tax Appeals)

U.S.C., Title 26, §1523(a) [see 7608] (Internal Revenue Officers)

U.S.C., Title 29, §161 (Labor Relations Board)

U.S.C., Title 33, §506 (Secretary of Army)

U.S.C., Title 35, §§54–56 [now 24] (Patent Office proceedings)

U.S.C., Title 38, [former] §133 (Veterans' Administration)

U.S.C., Title 41, §39 (Secretary of Labor)

U.S.C., Title 45, §157 Third. (h) (Board of Arbitration under Railway Labor Act)

U.S.C., Title 45, §222(b) (Investigation Commission under Railroad Retirement Act of 1935)

U.S.C., Title 46 [App.], §1124(b) (Maritime Commission)

U.S.C., Title 47, §409(c) and (d) (Federal Communications Commission)

U.S.C., Title 49, §12(2) and (3) [see 721(c) and 13301(c)] (Interstate Commerce Commission)

U.S.C., Title 49, §173a [see 46104] (Secretary of Commerce)

# EXHIBIT I

| From: | Steven Finley |
|---|---|
| Sent: | Monday, December 21, 2020 1:23 PM |
| To: | Washburn, Bryan K. |
| Cc: | Bundy, Kerry L.; Linderman, Lauren W. |
| Subject: | RE: Target/ISTC--Subpoena for Larry Satz |

Okay.

Sincerely,
Steven C. Finley
Hennefer, Finley & Wood, LLP
11 Embarcadero West, Suite 140
Oakland CA 94607
Tel: (510) 272-0200 ext. 305
Fax: (415)296 7111
E-mail: sfinley@finleylaw.biz
PLEASE RESPOND TO THIS EMAIL ADDRESS AND UPDATE YOUR RECORDS TO REFLECT THE CHANGE.
Website: www.finleylawyer.com

CONFIDENTIALITY NOTICE: This ELECTRONIC MAIL is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

**From:** Washburn, Bryan K. [mailto:bryan.washburn@faegredrinker.com]
**Sent:** Saturday, December 19, 2020 5:35 AM
**To:** Steven Finley <sfinley@finleylaw.biz>
**Cc:** Bundy, Kerry L. <kerry.bundy@faegredrinker.com>; Linderman, Lauren W. <lauren.linderman@faegredrinker.com>
**Subject:** RE: Target/ISTC--Subpoena for Larry Satz

Mr. Finley,

Thank you for your email. We propose holding Mr. Satz's deposition on January 14 starting at 10:30 CST. We would still expect Mr. Satz's document production by January 6. Please let us know if Mr. Satz would prefer to produce electronically or would need to produce the documents somewhere in the St. Louis area.

Thanks,
Bryan

**Bryan K. Washburn**
Associate
bryan.washburn@faegredrinker.com
Connect: vCard

+1 612 766 8014 direct / +1 612 766 1600 fax

Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota 55402, USA

This Message originated outside your organization.

---

I am requesting that the return date on the subpoena be set for a date in the week of January 11 (other than the 13th).
Please advise.

Sincerely,
Steven C. Finley
Hennefer, Finley & Wood, LLP
11 Embarcadero West, Suite 140
Oakland CA 94607
Tel: (510) 272-0200 ext. 305
Fax: (415)296 7111
E-mail: sfinley@finleylaw.biz
PLEASE RESPOND TO THIS EMAIL ADDRESS AND UPDATE YOUR RECORDS TO REFLECT THE CHANGE.
Website: www.finleylawyer.com

CONFIDENTIALITY NOTICE: This ELECTRONIC MAIL is intended only for the use of the individual or entity
to which it is addressed, and may contain information that is privileged, confidential and exempt from
disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in error,
please notify us immediately by telephone. Thank you.

**From:** Washburn, Bryan K. [mailto:bryan.washburn@faegredrinker.com]
**Sent:** Tuesday, December 15, 2020 1:01 PM
**To:** Steven Finley <sfinley@finleylaw.biz>
**Cc:** Bundy, Kerry L. <kerry.bundy@faegredrinker.com>; Linderman, Lauren W. <lauren.linderman@faegredrinker.com>
**Subject:** Target/ISTC--Subpoena for Larry Satz

Mr. Finley,

Attached please find the executed subpoena in the above-referenced matter. Please let us know if you will accept service
on behalf of Mr. Satz. The deposition is ordered for January 6, but we can work with you on the date for another time in
early January.

Thanks,
Bryan

**Bryan K. Washburn**
Associate
bryan.washburn@faegredrinker.com
Connect: vCard

+1 612 766 8014 direct / +1 612 766 1600 fax

Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota 55402, USA

Welcome to **Faegre Drinker Biddle & Reath LLP (Faegre Drinker)** - a new firm comprising the former Faegre Baker Daniels and Drinker Biddle & Reath. Our email addresses have changed with mine noted in the signature block. All phone and fax numbers remain the same. As a top 50 firm that draws on shared values and cultures, our new firm is *designed for clients.*

*****************************

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments. Thank you.
*****************************

*****************************

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments. Thank you.
*****************************