UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| International Seaway Trading Corporation, | Case No. 0:20-mc-00086-NEB-KMM |
| Petitioner/Counter-Defendant, | |
| v. | |
| Target Corporation, | **ORDER** |
| Respondent/Counter-Claimant. | |
| Lawrence Satz, | |
| Movant. | |

This matter is before the Court on Lawrence Satz's motion to quash a subpoena issued by an arbitrator presiding over the arbitration proceeding between International Seaway Trading Corporation ("Seaway") and Target Corporation ("Target"). ECF No. 6. For the reasons that follow, the motion to quash is denied.[1]

**I.  Background**

Until 2018, Seaway was a vendor of shoes and boots to Target under a "Partners Online" or "POL" contract between the parties. *See* Decl. of Steven Finley ("Finley Decl."),

---

[1] On February 2, 2021, Mr. Satz filed a letter withdrawing the portion of his motion to quash that challenged the arbitrator's authority to issue a pre-hearing subpoena for the production of documents in light of the holding in *In re Security Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000). Movant's Letter, ECF No. 26. He acknowledged that "responsive documents, if any, will be produced to opposing counsel via email, or in the absence of any such documents in his possession, a declaration to that effect provided to counsel electronically." Movant's Letter at 1. Based on Mr. Satz's withdrawal of this issue, the Court will not address the propriety of the arbitrator's subpoena for documents.

Ex. A, ECF No. 9. In 2018, Target and Seaway had a disagreement about the quality of Seaway's products. Seaway claimed that Target failed to pay for the goods Target ordered as required by the POL agreement. Target countered that Seaway's products were defective, so Target refused to remit payment and sought replacement items from another vendor. Because the POL agreement contains a mandatory arbitration clause, in June 2019, Seaway initiated arbitration against Target in Minneapolis.

As the arbitration progressed, Target sought to depose Mr. Satz, a resident of St. Louis, Missouri. Mr. Satz was not a party to the arbitration, but he is a former Seaway employee who had been responsible for the company's business with Target. Mr. Satz was also a part owner of Seaway until 2014, when he sold his interest in the company to a group of investors. Finley Decl., Ex. C ("10/27/20 Satz Dep.") at 48–49. On October 15, 2020, with the consent of Seaway and its counsel, Steven Finley,[2] the arbitrator issued a subpoena for Mr. Satz to testify at a remote deposition and to bring requested documents with him. Finley Decl., Ex. B; Decl. of Bryan Washburn ("Washburn Decl."), Ex. 9 at 4 (indicating that Mr. Satz appeared for the deposition under subpoena). That deposition took place via Zoom on October 27, 2020.[3] *See* 10/27/20 Satz Dep. at 1.

---

[2]   Mr. Finley is also counsel of record for Mr. Satz in connection with his motion to quash Target's subpoena. Mr. Finley also represented Mr. Satz in his first deposition during the arbitration.

[3]   On the cover page for the transcript of Mr. Satz's deposition, it appears that the deposition commenced at 10:30 a.m. on October 27, 2020, but on the header of each page, the transcript excerpts indicated that the deposition was "conducted on October 29, 2020." This discrepancy is immaterial.

During the October 27th deposition, Target asked Mr. Satz several questions regarding the revenue and ownership of Seaway. *Id.* at 25–26, 39–41, 48–49; Washburn Decl. Ex. 9 at 42–49. Although Mr. Satz answered some of these questions, Mr. Finley instructed him not to answer several others, arguing that Seaway's ownership and earned revenue are not relevant to any of the issues in the arbitration. Target took the position that those topics were relevant to an unconscionability defense Seaway raised in response to Target's breach-of-contract counterclaims.

After Mr. Satz's October 2020 deposition, Jane Chou, the Chief Executive Officer of Seaway, contacted the arbitrator and informed him that Seaway "has no funds or assets and does not intend to pursue its Arbitration claims or defend against Target's claims." Finley Decl., Ex. D. Ms. Chou stated that Seaway was amenable to Target's request that it be declared the prevailing party with respect to Seaway's claims in the arbitration. *Id.*; Finley Decl. Ex. E. Target made clear that it intended to continue with its counterclaims against Seaway.[4] Finley Decl., Ex. E.

On December 4, 2020, Target asked the arbitrator to issue a new subpoena to Mr. Satz for an additional deposition focused on the issue of Seaway's ownership. *See* Finley Decl., Ex. G at 1. The arbitrator found that Mr. Finley had improperly instructed Mr. Satz not to answer questions at the first deposition based on the relevance objection, that the

---

[4] During the hearing on the motion to quash, Target's counsel represented that to receive a fully favorable arbitration award on its counterclaims, Target must show the arbitrator it is entitled to an award despite Seaway's apparent concession.

3

information was relevant, and that Target could inquire into Seaway's ownership pursuant to a prior ruling of the arbitrator. *Id.* at 2, ¶¶ 3, 4.

Although Mr. Satz had agreed to appear for his first deposition pursuant to a subpoena, Mr. Satz now asserted that the arbitrator had no power to issue a pre-hearing subpoena because Mr. Satz is not a party to the arbitration between Seaway and Target. *See id.* at 2–3, ¶ 8; Finley Decl., Ex. F at 2, ¶¶ 3–4. The arbitrator rejected that argument, stating that "[u]nder the [Federal Arbitration Act] and Eighth Circuit precedent, an arbitrator has the power to subpoena a third-party witness during pre-hearing discovery." Finley Decl., Ex. G at 2 ¶ 8. In support of that proposition, the arbitrator cited *In re Security Life Insurance Company of America*, 228 F.3d 865 (8th Cir. 2000), which held that under 9 U.S.C. § 7 an arbitrator has the power to issue a pre-hearing subpoena to a non-party for the production of documents. Accordingly, the arbitrator then issued a second subpoena requiring Mr. Satz to appear for a 3-hour video deposition on January 6, 2021. The arbitrator also required Mr. Satz to bring with him documents sufficient to show the ownership of Seaway from 2014 to the present. Finley Decl., Ex. H. On December 31, 2020, Mr. Satz filed this miscellaneous case asking the Court to quash the subpoena. ECF No. 6.

## II.   Discussion

Mr. Satz claims that an arbitrator has no authority to issue a subpoena to a non-party witness for a discovery deposition prior to an arbitration hearing. He also argues that the subpoena in this case cannot be enforced because he resides in St. Louis, which is outside the territorial limits imposed by Fed. R. Civ. P. 45(c). Finally, he asserts that the subpoena seeking to depose him for a second time would pose an undue burden and expense that are

4

disproportionate to the needs of the arbitration. Satz Mem. at 4–8, ECF No. 8. Target argues that the arbitrator has the power to issue a subpoena for Mr. Satz's deposition under Eighth Circuit precedent. Alternatively, Target contends, the Court should apply the doctrine of judicial estoppel to prevent Mr. Satz from litigating the issue of the arbitrator's power to issue the subpoena because Seaway, with whom Mr. Satz is arguably in privity, previously invoked the arbitrator's pre-hearing deposition subpoena power itself. Target further asserts that Rule 45's territorial limitations do not bar enforcement of the subpoena and that this Court should not reconsider the arbitrator's rulings regarding relevance or undue burden.

### A. Scope of the Arbitrator's Power: The Federal Arbitration Act

The Federal Arbitration Act gives arbitrators certain subpoena powers as set forth in 9 U.S.C. § 7.

> The arbitrators … may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.

There is no disagreement that this language gives arbitrators the power to subpoena non-parties to appear before them to testify and produce material documents during an arbitration hearing. *See, e.g.*, *Wash. Nat'l Ins. Co. v. OBEX Gr., LLC*, 958 F.3d 126, 136 (2d Cir. 2020) (concluding that summonses requiring respondents to appear at a hearing in New York were appropriate because they required the physical presence of the respondents at the hearing).

Although Section 7 speaks in terms of arbitrators' powers to summon "any person attend before them … as a witness" and bring along material documentary evidence, in *Security Life Insurance*, the Eighth Circuit held that the statute implicitly gives the arbitrator

5

power to issue a subpoena for the production of documents prior to an arbitration hearing. 228 F.3d at 870–71 (8th Cir. 2000). The court recognized that the statute does not "explicitly authorize the arbitration panel to require the production of documents for inspection by a party" prior to a hearing. *Id.* at 870. But the court reasoned that the interest in the "efficient resolution of disputes through arbitration … is furthered by permitting a party to review and digest relevant documentary evidence prior to the arbitration hearing." *Id.*

The *Security Life Insurance* court did not address whether Section 7 similarly authorizes an arbitrator's pre-hearing subpoena for a non-party deposition. Although that question had originally been raised, it was made moot by the respondent's agreement to sit for a deposition while the *Security Life Insurance* appeal was pending. *Id.* at 870 ("Transamerica's challenge to the district court's order compelling attendance of its employee at a pre-hearing deposition has been mooted by its compliance with the California court's subpoena.").

Because *Security Life Insurance* did not explicitly decide whether an arbitrator has the power to issue a pre-hearing subpoena for a non-party's deposition, Mr. Satz contends that the question remains open. He points to out-of-circuit case law where other courts have held, contrary to *Security Life Insurance*, that Section 7 does not authorize arbitrators to issue pre-hearing subpoenas for discovery from non-parties. *See Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145 (11th Cir. 2019) (rejecting pre-hearing subpoena calling for documents and witness testimony outside the presence of the arbitrator); *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703 (9th Cir. 2017) (pre-hearing document subpoena found invalid); *Life Receivables Tr. v. Syndicate 102 at Lloyd's London*, 549 F.3d 210 (2nd Cir. 2008) (document subpoena invalidated); *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d

6

404 (3rd Cir. 2004) (invalidating document subpoena). These cases have generally followed the conclusion in *Hay Group* that the plain language of Section 7 only explicitly authorizes arbitral summonses for a person to physically appear before the arbitrator to provide testimony and documents. *See* 360 F.3d at 406–11. The *Hay Group* court expressly disagreed with the Eighth Circuit's interpretation from *Security Life Insurance* that Section 7 implicitly authorizes a pre-hearing document subpoena, *id.* at 408–09, and it rejected "any argument in favor of ignoring the literal meaning of the FAA in the name of efficiency" because "efficiency is not the principal goal of the FAA," *id.* at 410.

The Court declines to follow the authority relied upon by Satz, and instead concludes that, under *Security Life Insurance*, an arbitrator has the authority to issue deposition subpoenas. First, unlike *Security Life Isnurance*, the other decision cited by Mr. Satz are not binding authority. And even though *Security Life Insurance* specifically addressed only an arbitrator's authority to issue a pre-hearing subpoena for documents, nothing in the Eighth Circuit's essential reasoning permits a different outcome when considering whether Section 7 authorizes a pre-hearing deposition subpoena. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *see also* Bryan A. Garner, *The Law of Judicial Precedent* ch. 4 at 44 ("The *holding* of an appellate court constitutes the precedent, as a point necessarily decided. *Dicta* do not: they are merely remarks made in the course of a decision but not essential to the reasoning behind that decision."). In *Security Life Insurance*, the Eighth Circuit interpreted § 7 of the FAA, and the same section either allows for pre-arbitration subpoenas or it does not. No line can be drawn between the

7

statute's application to pre-hearing written discovery or pre-hearing deposition subpoenas. Moreover, the Eighth Circuit's holding in *Security Life Insurance* includes the rationale that immediately preceded it—the interest in efficient resolution of disputes through arbitration "is furthered by permitting a party to review and digest relevant documentary evidence prior to the arbitration hearing." 228 F.3d at 870. The same interest in efficiency supports the Court's conclusion here: implicit in an arbitrator's power to subpoena a witness to testify before him or her at a hearing is the power to order the witness to testify at a pre-hearing deposition so that the parties may review and digest the relevant testimony before the hearing occurs.

Accordingly, the Court rejects Mr. Satz's argument that the arbitrator lacked the power to issue a subpoena for his pre-hearing deposition, and the motion to quash will not be granted on that basis.

### B. Reach of the Arbitrator's Power: Rule 45

Mr. Satz next argues that the subpoena should be quashed because it does not comply with the territorial limits found in Federal Rule of Civil Procedure 45. Mr. Satz argues that because he resides in St. Louis and the arbitrator is located in Minneapolis, the subpoena cannot command him to appear for a deposition because to do so would violate the 100-mile territorial limit imposed under Federal Rule of Civil Procedure 45(c). Satz Mem. at 6. This argument is not persuasive in this case, where the subpoena is for a remote deposition that Mr. Satz can attend from home.

Section 7 of the FAA provides that a summons or subpoena from an arbitrator "shall be served in the same manner as subpoenas to appear and testify before the court." For

purposes of addressing Mr. Satz's argument, the Court will assume that this language may require compliance with Federal Rule of Civil Procedure 45. *See Security Life Insurance*, 228 F.3d at 871 (linking former Rule 45(d)(2)'s limitations on where a subpoena can be served to the language in 9 U.S.C. § 7).

With respect to how a subpoena can be served, Rule 45 was amended in 2013. In its current version, Rule 45 provides that a subpoena "may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). Prior to the 2013 amendments, a subpoena could not be served so broadly, but could only be served: at any place within the district of the court that issued it; any place outside the issuing district, but within 100 miles of the place of the deposition; any place within the state where a state statute or rule of court allowed service of a subpoena issued by a state court sitting in the place of the deposition; or any place where the court authorizes service based on a motion and a showing of good cause. Fed. R. Civ. P. 45(b)(2) (2012); *see also Security Life Insurance*, 228 F.3d at 871 (citing the old version of Rule 45(b)(2) regarding the place of service).

These limits on the place of service of a subpoena created a "thorny question indeed, presenting what may be a serious problem in the enforcement of witness subpoenas under the FAA." *Security Life Insurance*, 228 F.3d at 871–72. For example, if a subpoena could only be served in the limited geographical areas discussed in former Rule 45(b)(2), a Minneapolis-based arbitrator's subpoena could not be served in St. Louis. St. Louis is not within the same State or judicial district, and it is greater than 100 miles away. Now the portion of Rule 45 giving rise to the "thorny question" identified in *Security Life Insurance* is no longer present. Indeed, under the plain terms of its current version, Rule 45 allows a subpoena to be *served*

9

anywhere in the United States. Fed. R. Civ. P. 45(b)(2). Under the current version of Rule 45(b)(2) permitting nationwide service of a subpoena, the Court finds no barrier to enforcement of the subpoena in this case based on any problems with the location of service.

Mr. Satz separately argues that Rule 45(c) prevents enforcement of this subpoena. That Rule states that a subpoena "may command a person to attend a … deposition only … within 100 miles of where the person resides…." Fed. R. Civ. P. 45(c)(1)(A). "Unlike the prior rule, place of service is not critical to place of compliance." *Id.*, AdvisoryCcommittee's notes to 2013 amendment. Even if it is properly served, a court can quash a subpoena that does not comply with the "geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A). But the 100-mile limitation now found in Rule 45(c) has to do with the place of *compliance*; not the location of the court from which the subpoena issued.

Here, the arbitrator's subpoena commands Mr. Satz to appear for a deposition to be taken "by virtual means." Finley Decl., Ex. H at 1. As a result, Mr. Satz can comply with the deposition from his home or anywhere else he chooses that is within 100 miles of his residence. Virtual attendance of this nature is consistent with the plain language of Rule 45(c)(1)(A) because he has been commanded to attend the deposition within 100 miles of where he resides. *See In re Newbrook Shipping Corp.*, Misc. No. JKB-20-0150, 2020 WL 6451939, at *4 (D. Md. Nov. 3, 2020) ("[A virtual deposition] no longer requires [the deponent] to travel more than 100 miles (or at all) to comply, so the Court declines to address [the] argument that the subpoena compels [the deponent] to comply outside of the geographical bounds of Rule 45(c).")). Given the plain language of Rule 45(c), a remote

deposition subpoena requiring Mr. Satz's compliance in St. Louis does not run afoul of the Rule simply because it was issued by an arbitrator in Minneapolis.

Mr. Satz states that "post-2013, Rule 45 gave the issuing court personal jurisdiction over a subpoenaed witness located anywhere in the United States; but the subpoena would not be enforceable against a witness refusing to appear who resides outside of the 100-mile territorial limit." Satz Mem. at 6–7.[5] But this argument conflates compliance with Rule 45(c)(1)(A)'s limitation with Mr. Satz's suggestion, discussed above, that Section 7 of the FAA does not grant an arbitrator the power to issue a subpoena for a non-party's discovery deposition. For the same reasons outlined above, the decision in *Security Life Insurance* cannot be read to prohibit pre-hearing subpoenas for non-party depositions, and Rule 45(c)'s new territorial limits on where a subpoena may command a person to appear for a deposition do not change that conclusion.

At the hearing, Mr. Satz's counsel directed the Court's attention to a District of Minnesota case not cited in his opening brief—*SchlumbergerSema, Inc. v. Xcel Energy, Inc.*, No. CIV 02-4304PAMJSM, 2004 WL 67647 (D. Minn. Jan. 9, 2004). Mr. Satz's reliance on *Schlumberger* is misplaced. In *Schlumberger*, Xcel Energy—the party seeking the nonparty

---

[5] Mr. Satz argues that the subpoena here presents the same dilemma in enforcing arbitrators' subpoenas recognized by the court in *Security Life Insurance*. Satz Mem. at 7 (quoting *Security Life Ins.*, 228 F.3d at 872). But the Eighth Circuit's observations were based on the prior version of Rule 45, which limited the locations where a subpoena may be served. It did not deal with a Rule that allowed nationwide service of a subpoena and placed limits on the place of compliance. Mr. Satz does not explain how the subpoena in this case, which calls for a remote deposition, raises any issue with requiring a non-party to travel for a deposition farther than Rule 45(c) allows.

11

deposition—moved to enforce the subpoena under Rule 37. *Id.* at *1. The arbitration panel was sitting in Minneapolis, but Xcel Energy wanted to depose an individual in New York. *Id.* Under Rule 37(a)(2), only the court in which the discovery was pending (the New York court) could order the non-party to comply with a subpoena, even though Section 7 of the FAA grants the power to enforce subpoenas to the district court for the district in which the arbitration panel is sitting (the Minneapolis court). *Id.* at *1–2. So, much like the version of Rule 45(b)(2) issue in *Security Life Insurance*, the interplay between Section 7 of the FAA and Rule 37 potentially created a jurisdictional gap.[6] *Id.* at *2 (observing that under Section 7 the district of Minnesota had the exclusive authority to enforce the Minneapolis arbitration panel's subpoena, "but Rule 37 requires that a party seeking to enforce the subpoena against Schlumberger may do so only in the United States District Court for the Eastern District of New York"). Relying on *Security Life Insurance*, the *Schlumberger* court ultimately found that it did not have the power to enforce the deposition subpoena, because depositions are more onerous and impose a greater burden than document production. *Id.*

*Schlumberger*'s jurisdictional gap is not present here. This case does not involve any interplay between Section 7 and Rule 37. As a result, the Court is not being asked to enforce a subpoena under a Rule that provides that the relevant motion can only be made in a different forum. Nor does the Court agree that the *Schlumberger* court's distinction between the burden associated with the production of documents and burden imposed by a witness

---

[6]   Rule 37(a)(2) currently provides that a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken." At the time *Schlumberger* was decided the same provision was in Rule 37(a)(1). 2004 WL 67647 at*2 (citing Rule 37(a)(1)).

deposition requires a different outcome. 2004 WL 67647, at *2. As the *Schlumberger* court noted, *Security Life Insurance* stated that an order for the production of documents does not require compliance with the service limitations applicable in former Rule 45(b)(2). *Security Life Ins.*, 228 F.3d at 872. According to the *Security Life Insurance* court, such compliance was not required "because the burden of producing documents need not increase appreciably with an increase in the distance those documents must travel." *Id.* But a subpoena for a remote deposition, like the one issued by the arbitrator here, does not require Mr. Satz to travel at all. As a result, the potential burden raising concerns in these cases was that imposed by requiring a non-party witness to travel an excessive distance to provide testimony. That same concern simply is not present here.[7]

### C. Relevance and Burden

Finally, Mr. Satz argues that the Court should quash the arbitrator's subpoena because the testimony concerning Seaway's ownership is irrelevant to any issues pending in the arbitration and the deposition will impose a significant burden on him. As to relevance, Mr. Satz suggests that Seaway's abandonment of its claims and plans to default on Target's counterclaims mean that there is no longer any claim or defense in the arbitration to which the discovery would be probative. He also suggested at the hearing that Target's request for

---

[7] The court notes that in dicta, the *Schlumberger* court expressed doubt about whether a subpoena for a pre-hearing deposition of a non-party witness "is proper in the first instance." 2004 WL 67647, at *2. Such doubts may be well founded, and perhaps the Eighth Circuit may revisit its interpretation of Section 7 of the FAA in the future. But *Security Life Insurance* remains good law, *Neo Ivy Capital Mgmt. LLC v. Savvysherpa LLC*, No. 18-MC-0094 (SRN/DTS), 2019 WL 1435058, at *2–3 (D. Minn. Mar. 8, 2019), and as the Court has held above, the essential rationale for allowing document subpoenas does not justify barring a subpoena for a pre-hearing deposition.

13

the deposition is an improper attempt to conduct post-judgment discovery where no judgment has yet been entered. Regarding the burden, Mr. Satz emphasizes that he has already sat for one deposition. *See* Satz Mem. at 7–8.

Without commenting on the merits of any of these arguments, the Court concludes that none provide a valid basis for quashing the arbitrator's subpoena. The arbitrator has already considered these issues, and issued the subpoena nonetheless. Indeed, the *Security Life Insurance* court rejected an almost identical argument. There, the respondent of the subpoena suggested that "§ 7 required the district court to make an independent assessment of the materiality of the information sought by Security before acting to compel compliance with the panel's subpoena." 228 F.3d at 871. The court found that nothing in the language of Section 7 supports a "requirement that the district court second-guess the panel's judgment" about materiality, and reasoned that such a requirement "is antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand." *Id.* These observations apply with equal force here. The arbitrator in this case was certainly capable of addressing Mr. Satz's arguments concerning burden and relevance, and indeed, the arbitrator resolved those issues against Mr. Satz.[8] This Court will not second-guess that determination.

---

[8]   At the hearing, Mr. Satz suggested that the Court should revisit the arbitrator's relevance or materiality determination because the arbitrator did not discuss Satz's position that Seaway's abandonment of its claims and decision to forego a defense on Target's counterclaims vitiated any relevance of the testimony sought. But the arbitrator had those arguments before him. The Court assumes that the arbitrator found those reasons uncompelling, and even if the arbitrator erred in making that determination, *Security Life Insurance* "decline[d] to saddle the courts of this circuit with … a burden" of revisiting relevance determinations. 228 F.3d at 871.

14

### III.  Order

For the reasons stated above, Mr. Satz's motion to quash the subpoena is **DENIED**.

Date: February 22, 2021

                                            *s/ Katherine Menendez*
                                            Katherine Menendez
                                            United States Magistrate Judge